[807 NE2d 273, 775 NYS2d 224]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WALTER
GONZALEZ, Respondent.

Argued February 19, 2004; decided March 25, 2004

## POINTS OF COUNSEL

*Howard R. Relin, District Attorney,* Rochester (*Wendy Evans Lehmann* of counsel), for appellant. The trial court properly denied defendant's motion for a trial order of dismissal, since there was sufficient evidence to permit the jury to conclude that he acted recklessly under circumstances evincing a depraved indifference to human life, and accordingly the Appellate Division erred in reversing defendant's conviction for depraved indifference murder. (*People v Sanchez,* 98 NY2d 373; *People v Tankleff,* 199 AD2d 550, 84 NY2d 92; *People v Cole,* 233 AD2d 247, 89 NY2d 984; *People v Crawford,* 295 AD2d 361, 98 NY2d 696; *People v Salcedo,* 304 AD2d 309; *People v Flowers,* 289 AD2d 504, 97 NY2d 754; *People v Lyons,* 280 AD2d 926, 96 NY2d 802; *People v Alston,* 298 AD2d 702, 99 NY2d 554; *People v Hafeez,* 100 NY2d 253; *People v Fink,* 251 AD2d 751, 92 NY2d 924.)

*Edward J. Nowak, Public Defender,* Rochester (*Timothy P. Donaher* of counsel), for respondent. Given the dearth of evidence supporting the depraved indifference murder count, the trial court erred in not granting defense counsel's motion for a trial order of dismissal seeking to dismiss that count. (*People v Hafeez,* 100 NY2d 253; *People v Williams,* 84 NY2d 925; *People v Hines,* 97 NY2d 56; *People v Lynch,* 95 NY2d 243; *People v Roe,* 74 NY2d 20; *People v Register,* 60 NY2d 270, 466 US 953; *People v Gomez,* 65 NY2d 9; *People v Russell,* 91 NY2d 280; *People v Gallagher,* 69 NY2d 525; *People v Sanchez,* 98 NY2d 373.)

## OPINION OF THE COURT

Chief Judge KAYE.

On January 25, 2000, defendant entered a Rochester barber shop and whispered something to another person in the shop. Although both left quickly, defendant soon returned, kicked in the door, stepped inside, pulled a gun from his waistband and shot the victim in the chest from a distance of six to seven feet. As the victim fell to the floor, defendant fired again, shooting him in the head. Defendant then leaned over the prone body and fired eight more shots into the victim's back and head. De-

fendant waved the gun at the only eyewitness—the barber—warned him not to say anything and walked out the door. Medical testimony established that defendant shot the victim once in the chest, once in the face from 6 to 18 inches away, six times in the back of the head from approximately six inches away, and twice in the back. Any one of the shots could have been fatal.

After his arrest, defendant made a written statement in which he claimed that he had been afraid of the victim, who had repeatedly threatened him because the victim's niece had accused him of raping her. Defendant said that he became tense and panicked when he saw the victim in the barber shop. Defendant further stated that he had been carrying a gun for protection, but had "blanked out" as a result of fear and could not recall the shooting. The next day, he "couldn't believe what had happened." Later, on the way to booking, a police officer asked him, "Well, if you had blacked out, why are you having these nightmares? . . . Could you be having these nightmares because you shot him?" Defendant replied, "Of course I shot him."

Defendant was indicted for both intentional and depraved indifference murder, as well as for criminal possession of a weapon in the second and third degrees. At the conclusion of the People's proof, defendant moved for a trial order of dismissal, arguing that the evidence was legally insufficient to establish his guilt of depraved indifference, as opposed to intentional, murder. Supreme Court denied the motion and submitted both counts to the jury in the alternative. The jury acquitted defendant of intentional murder but convicted him of depraved indifference murder and two counts of criminal possession of a weapon. The Appellate Division, with one Justice dissenting, reversed the murder conviction, concluding that the evidence was legally insufficient to establish depraved indifference, and affirmed the weapon possession convictions, for which defendant is serving 15 years in prison. We now affirm.

## Discussion

A defendant is guilty of depraved indifference murder in the second degree when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense

when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).

As the Appellate Division correctly concluded, in this case "defendant was guilty of an intentional shooting or no other" (*People v Wall*, 29 NY2d 863, 864 [1971]). A defendant acts intentionally with respect to a result "when his conscious objective is to cause such result" (Penal Law § 15.05 [1]). The only reasonable view of the evidence here was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the ground.

Depraved indifference murder differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant's conduct. Depraved indifference murder is exemplified by a defendant—unconcerned with the consequences—who fires into a crowd (*see e.g. People v Jernatowski*, 238 NY 188 [1924]); drives an automobile down a crowded sidewalk at high speed (*see People v Gomez*, 65 NY2d 9 [1985]); shoots a partially loaded gun at a person's chest during a game of Russian roulette (*see People v Roe*, 74 NY2d 20 [1989]); abandons a helplessly intoxicated person on a snowy highway at night (*see People v Kibbe*, 35 NY2d 407 [1974]); or repeatedly beats a young child over a period of several days (*see People v Poplis*, 30 NY2d 85 [1972]).

When a defendant is in that sense indifferent to whether death will likely result from his or her conduct—including with respect to a single victim—depraved indifference may be manifest. But where, as here, a defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct.

The prosecution's speculative argument—that the jury may have concluded that defendant recklessly fired the first shot spontaneously or impulsively and then decided to intentionally shoot nine more times—is unsupported by any reasonable view of the evidence and thus no rational jury could have accepted it. "From this record there exists no valid line of reasoning that

could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder" (*People v Hafeez*, 100 NY2d 253, 259 [2003]).

The People also maintain that the evidence was sufficient to support a conclusion that defendant acted recklessly by consciously disregarding the risk that if he came across someone he intended to shoot while carrying a gun, he might intentionally shoot that person, or that if he did, that person would die. But a person cannot act both intentionally and recklessly with respect to the same result. "The act is either intended or not intended; it cannot simultaneously be both" (*People v Gallagher*, 69 NY2d 525, 529 [1987]). Because "guilt of one necessarily negates guilt of the other," intentional and depraved indifference murder are inconsistent counts (*id.*).

Depraved indifference murder does not mean an extremely, even heinously, intentional killing. Rather, it involves a killing in which the defendant does not have a conscious objective to cause death but instead is recklessly indifferent, depravedly so, to whether death occurs. When defendant shot his victim at close range, he was not recklessly creating a grave risk of death, but was creating a virtual certainty of death born of an intent to kill. There is no record evidence that defendant "consciously disregarded" that certainty. Indeed, firing 10 times did not establish extremely reckless homicide under Penal Law § 125.25 (2). Rather, it confirmed the intent to kill. The People's tautology, if accepted, would improperly convert every intentional homicide into a depraved indifference murder.

Our decision in *People v Sanchez* (98 NY2d 373 [2002]) is not to the contrary. In *Sanchez*, depraved indifference murder was established by "the sudden shooting of a victim by a defendant who reached around from behind a door and fired into an area where children were playing, presenting a heightened risk of unintended injury" (*Hafeez*, 100 NY2d at 259). The defendant's conduct in firing from behind a partly closed door established his indifference to the grave risk of death posed by his actions. Here, by contrast, the only conclusion reasonably supported by the evidence was that defendant shot to kill his intended victim.

When a defendant's conscious objective is to cause death, the depravity of the circumstances under which the intentional homicide is committed is simply irrelevant. Nor can the wanton disregard for human life inherent in every intentional homicide convert such a killing into a reckless one. To rise to the level of

depraved indifference, the reckless conduct must be " 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes the death of another' " (*People v Russell*, 91 NY2d 280, 287 [1998], quoting *People v Fenner*, 61 NY2d 971, 973 [1984]).

In arguing that the jury might have concluded that defendant acted out of fear and anger, and therefore without intent, the People confuse recklessness with extreme emotional disturbance. A defendant who commits murder because of uncontrollable emotion may be entitled to raise an affirmative defense to murder, but the extreme emotional disturbance defense "does not negate intent. The influence of an extreme emotional disturbance explains the defendant's intentional action, but does not make the action any less intentional" (*People v Patterson*, 39 NY2d 288, 302 [1976], *affd* 432 US 197 [1977]; *accord People v Fardan*, 82 NY2d 638, 644 [1993] [extreme emotional disturbance defense "recognizes that defendant intended to kill his victim but, by legislative prerogative, the accused is viewed as being less blameworthy"]). Indeed, when there is a finding that the defendant acted under extreme emotional disturbance, the offense is reduced from intentional murder in the second degree to intentional—not reckless—manslaughter in the first degree (*see* Penal Law § 125.25 [1] [a]; § 125.20 [2]).

In short, because the depraved indifference murder count was unsupportable as a matter of law, the trial court erred in allowing the jury to consider it. It may well be that, had the jury not been invited to consider depraved indifference murder, it would have convicted defendant of intentional murder. But the choice to proceed on both theories does not exempt this case from the dictates of the law. Inasmuch as this "was a quintessentially intentional attack directed solely at the victim" (*Hafeez*, 100 NY2d at 258), the trial court erred in denying defendant's motion for a trial order of dismissal as to the depraved indifference count.

Accordingly, the order of the Appellate Division should be affirmed.

Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed.