OPINION OF THE COURT
Tom, J.P.
Defendant, who was found guilty of one count of depraved indifference murder, appeals from the denial of his motion to vacate the judgment of conviction in which he alleged that his trial counsel, Lynne Stewart,[1] failed to provide him with effective assistance, in violation of his constitutional rights (CPL 440.10 [1] [h]). A Justice of this Court granted leave to appeal (CPL 460.15), and we now affirm. The motion presumes prescience as the standard of effective assistance of counsel, which far exceeds the constitutional requirement to afford a defendant with meaningful representation “viewed in totality and as of the time of the representation” (People v Baldi, 54 NY2d 137, 147 [1981]).
The victim, Jason Maldonado, was being driven home after spending the night at various clubs. The driver, Gregory Bright, agreed to give a ride to two women, one of whom, Jessica Herrera, was defendant’s girlfriend of two years. She had promised to go to defendant’s house earlier that evening, but instead spent the entire night with her girlfriend, the fourth occupant of the car, first at a night club in Manhattan and then at a friend’s apartment. Defendant conceded that he was “very, very upset” with Herrera and had called her a number of times during the night, once while she was in the car. Defendant took the “biggest knife” he could find in his mother’s kitchen, put it in *124 his pocket, and went down to wait for Herrera at a street corner. When Herrera arrived in the vicinity of defendant’s home and got out of the vehicle, defendant came over and pushed or slapped her in the face. As Maldonado was closing the car door, defendant kicked it shut, injuring Maldonado’s arm. Bright testified that as Maldonado emerged from the car and before he could step away from the vehicle, he “sat back,” and asked to be taken to the hospital because he had been stabbed. Bright then watched as Maldonado pulled a knife from the left side of his abdomen and could see his intestines protruding through the wound. Maldonado later passed out. The emergency medical technician at Lincoln Hospital saw Maldonado upon arrival bleeding from the abdominal area, with two feet of his large intestine protruding from his abdomen. The victim later died of hemorrhagic shock as the result of perforation of major blood arteries. The fatal stab wound was “V-shaped,” and as explained by the medical examiner was caused either by the victim twisting and turning as the knife entered his body, or by the perpetrator twisting the knife as he plunged it into the victim. The blade penetrated five to six inches into the abdominal cavity.
Defendant testified that Maldonado and one other person (presumably Bright) were hitting him, that he had not intended to stab Maldonado with the knife but had “waved it around,” contending that Maldonado was stabbed as he swung at defendant and came into contact with the blade. Defendant testified that he took the knife because he was “scared” to go outside.
Defendant was charged with two counts of murder in the second degree under a so-called “dual-count indictment” alleging both intentional and depraved indifference murder (see People v Feingold, 7 NY3d 288, 291 [2006]), as well as manslaughter in the first degree and criminal possession of a weapon in the fourth degree. After the close of evidence, the court denied a defense motion to dismiss the indictment, in which counsel asserted, “The People have not made out a prima facie case of intentional murder.” On March 16, 2004, the jury returned a verdict of guilty on the count of second-degree murder under the depraved indifference theory. On April 15, trial counsel moved to set aside the verdict and reduce the conviction to manslaughter in the second degree (CPL 330.30). The trial court denied the motion, finding that by confining his motion for a trial order of dismissal to the charge of intentional murder, defendant had failed to preserve the issue of the sufficiency of the evidence with respect to the charge of depraved indifference *125 murder. The court rendered judgment on May 11, 2004, sentencing defendant to a term of imprisonment of 18 years to life.
This Court affirmed the judgment, agreeing that the sufficiency claim as to the charge of depraved indifference murder was unpreserved and stating that were we to review it, “we would find the verdict was based on legally sufficient evidence, based on the court’s charge as given without exception” (40 AD3d 468, 468 [2007], lv denied 9 NY3d 881 [2007]). Likewise, we found that “the verdict was not against the weight of the evidence in light of the elements of the crime as charged to the jury without objection” (id. at 468-469).
Defendant then brought this CPL 440.10 motion claiming that his trial counsel failed to provide him with effective assistance. The moving papers assert that counsel was remiss in failing to argue that the depraved indifference second-degree murder count, although sustainable under an objective recklessness standard, was not supported by the requisite subjective depravity on defendant’s part. Had counsel properly distinguished recklessness and depravity, defendant argued, the court would have dismissed the depraved indifference murder count or modified its instructions to the jury, with the result that “the jury might well have acquitted Mr. Sanchez on the depraved indifference count.” In any event, defendant argued, a properly detailed objection
“would have allowed the Appellate Division to conduct a plenary review of the weight of the evidence, without limitation to review of the ‘elements of the crime as charged to the jury without objection’ . . . and Mr. Sanchez would have obtained a reversal of his conviction as against the weight of the evidence.”
The accompanying affidavit of Lynne Stewart stated that the failure to “make an argument regarding the depraved murder count . . . was simply an oversight on my part. I did not have any strategic or tactical reason for not specifically addressing the depraved murder count,” while conceding that she “was generally aware of the unsettled state of the law regarding depraved indifference murder and that some courts had found that depraved indifference murder was not adequately differentiated from reckless manslaughter.”
*126 Over the course of a few years, the crime of depraved indifference murder,[2] as it applies to a single victim, has evolved from a killing characterized by wanton recklessness, as an objective test determined from the factual circumstances of the crime (see Feingold, 7 NY3d at 291), to an unintentional killing carried out with a requisite mental state, or mens rea, that constitutes “the core criminal element, depraved indifference” (id. at 295).
At the time of trial, the law with respect to depraved mind murder was delineated by People v Register (60 NY2d 270 [1983], cert denied 466 US 953 [1984]) and People v Sanchez (98 NY2d 373 [2002]), which looked to the “factual setting in which the risk creating conduct must occur,” to determine whether the actions causing death reflected a depraved indifference to human life (Register, 60 NY2d at 276). It was only a dissenting viewpoint that depravity was intended by the Legislature to be the mens rea of the offense (id. at 281-282 [Jasen, J., dissenting]), or that the Register formulation failed to draw a substantive distinction between intentional and depraved indifference murder (Sanchez, 98 NY2d at 394 [Rosenblatt, J., dissenting]). “[T]he majority,” as Judge Rosenblatt put it, “leaves no conceivable circumstances under which a charge of intentional murder will not be amenable to a conviction for depraved indifference murder” (id., cited with approval in Feingold, 7 NY3d at 291).
The year before defendant was convicted, the Court of Appeals decided People v Hafeez (100 NY2d 253 [2003]), which defendant contends began to recognize Judge Rosenblatt’s view of the scope of depraved indifference murder. In Hafeez, the defendant and his codefendant waited while a third person lured the victim from a bar. The victim was then pushed up against a wall by the defendant, and struggled with the codefendant, who administered the fatal stab wound. The Court of Appeals found that the trial evidence clearly showed a calculated and intentional murder, rather than a depraved indifference murder, and affirmed the Appellate Division’s reversal of the defendant’s conviction of depraved indifference murder. Judge Rosenblatt applauded the majority for “rejecting the incongruous notion *127 that an intentional killing can reflect depraved indifference” and emphasized depravity as a distinct element of the crime, not mere recklessness (id. at 260 [Rosenblatt, J., concurring]). However, to arrive at its decision, the Hafeez Court continued to adhere to Sanchez and to rely on the requirement it imposed on the People in Register to demonstrate that the “defendant’s acts were ‘imminently dangerous and presented a very high risk of death to others’ ” {id. at 259, quoting Register, 60 NY2d at 274). The Court reasoned that the People had met this burden in Sanchez because while the fatal shots were fired at pointblank range from behind a partially closed door, that shooting had occurred in “an area where children were playing, presenting a heightened risk of unintended injury” {id.). But the circumstances in Hafeez permitted “no valid line of reasoning that could support a jury’s conclusion that defendant possessed the mental culpability required for depraved indifference murder. The ‘heightened recklessness’ required for depraved indifference murder was simply not present” {id.). The Court emphasized that “both defendants were focused on first isolating, and then intentionally injuring, the victim” {id.).
Shortly before defendant moved to set aside the jury verdict herein, the Court of Appeals decided People v Gonzalez (1 NY3d 464 [2004]). There, the defendant kicked in the door of a barber shop,
“stepped inside, pulled a gun from his waistband and shot the victim in the chest from a distance of six to seven feet. As the victim fell to the floor, defendant fired again, shooting him in the head. Defendant then leaned over the prone body and fired eight more shots into the victim’s back and head. Defendant waved the gun at the only eyewitness— the barber—warned him not to say anything and walked out the door” {id. at 465-466).
In affirming the dismissal of a second-degree depraved indifference murder count, the Court noted, “Depraved indifference murder differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant’s conduct” (id. at 467). The Court emphasized that “a person cannot act both intentionally and recklessly with respect to the same result. ‘The act is either intended or not intended; it cannot simultaneously be both’ ” (id. at 468, quoting People v Gallagher, 69 NY2d 525, 529 [1987] [counts of intentional and *128 depraved mind murder arising out of the same killing must be submitted to the jury in the alternative]), and since “ ‘guilt of one necessarily negates guilt of the other,’ intentional and depraved indifference murder are inconsistent counts” (id., quoting Gallagher, 69 NY2d at 529).
Again, the Court stated that its decision was not contrary to Sanchez. There, “[t]he defendant’s conduct in firing from behind a partly closed door established his indifference to the grave risk of death posed by his actions. [In Gonzalez], by contrast, the only conclusion reasonably supported by the evidence was that defendant shot to kill his intended victim” (id.). It was unnecessary to even consider the risk that the defendant’s conduct may have posed to bystanders, leading the Court to conclude that “[w]hen a defendant’s conscious objective is to cause death, the depravity of the circumstances under which the intentional homicide is committed is simply irrelevant” (id.).
In sum, as of April 15, 2004, when counsel moved to set aide the jury verdict, only two limited constraints had been imposed by the Court of Appeals on the Register recklessness standard applicable to depraved indifference murder. First, the grave risk of death presented by the defendant’s conduct must extend to someone other than the victim (Hafeez, 100 NY2d at 259). Second, if the intent to take the victim’s life is apparent from the circumstances of the crime, a conviction of depraved indifference murder is unsupportable, and the count should not be submitted to the jury (Gonzalez, 1 NY3d at 469). Neither factor affords a basis for dismissal of the depraved indifference murder count against defendant in this case, and he does not suggest what argument his trial counsel realistically could have made that would have resulted in a favorable ruling on either the motion to set aside the verdict or the motion to vacate the judgment of conviction.
It is defendant’s contention that had counsel’s motion to dismiss been based on the ground that the evidence was insufficient to prove the requisite mental state for depraved indifference murder, the trial court might have dismissed that count or, alternatively, defendant’s conviction would have been reversed on appeal. However, defendant cites no case decided prior to either of his motions requiring that a defendant convicted of depraved mind murder must have acted with a particular mental state rather than under circumstances characterized by a heightened degree of recklessness.
*129 The law defendant now relies upon evolved in the two years following his conviction. In People v Payne (3 NY3d 266, 272 [Oct. 19, 2004]), the Court of Appeals articulated that depravity is a specific form of recklessness, quoting the drafters of the Penal Law to the effect that “depraved indifference murder is ‘extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness.’ ” Payne reiterated that such “[i]ndifference to the victim’s life . . . contrasts with the intent to take it” (id. at 270). It was not until People v Suarez (6 NY3d 202, 214 [2005]) that the Court distinguished depravity from recklessness, stating that depraved indifference “constitutes an additional requirement of the crime—beyond mere recklessness and risk—which in turn comprises both depravity and indifference, and that a jury considering a charge of depraved indifference murder should be so instructed.” The Court cautioned that depraved indifference murder will rarely apply to a killing involving a single victim (id. at 212). Significantly, it was only in Feingold (7 NY3d at 294) that the Court directly addressed “whether depraved indifference is a mental state (mens rea),” finally portraying it as the “core criminal element” and concluding, “[W]e cannot conceive that a person may be guilty of a depraved indifference crime without being depravedly indifferent” (id. at 295).
While defendant’s dismissal motion was directed solely at the intentional murder count and the trial court did not examine the sufficiency of the evidence in support of the depraved indifference murder count, defendant’s own testimony provides grounds to sustain the verdict. Defendant testified that he did not intend to kill Maldonado, that he was waving a large knife around while being struck by Maldonado and another person, and that the knife entered Maldonado as he was attempting to hit defendant. Therefore, it could be concluded that by waving a large kitchen knife around in close proximity to Maldonado and the other unidentified person, defendant acted recklessly and with wanton disregard of the grave risk of death his action posed to his victim and another person.
Defendant’s assertion that counsel should have requested a jury charge focusing on his mental state, rather than the objective circumstances, suffers from the same infirmity as his contention that the motion to dismiss should have differentiated between recklessness and depravity; the law, as then constituted, provided absolutely no basis for requesting such an instruction, and defendant does not suggest what instruction *130 counsel might have requested that would have led to his acquittal on the depraved indifference murder count.
Insofar as the claim of ineffective assistance is concerned, defendant has failed, even at this late juncture, to state what objection counsel could have interposed that would have led the trial court, on the basis of then prevailing law, to dismiss the depraved indifference murder count as unsupported by sufficient evidence. It is immaterial that the law subsequently changed; counsel’s performance must be assessed on the basis of the facts and viewed as of the time of the asserted deficiency in representation, without the benefit of hindsight (see Strickland v Washington, 466 US 668, 689 [1984]; People v Gatien, 17 AD3d 101 [2005], lv denied 4 NY3d 886 [2005]). Counsel could hardly have been expected to anticipate the parameters of subsequent decisions in Payne, Suarez, or certainly Feingold, that defendant now relies on in stating that the evidence of depraved indifference was insufficient.
Finally, whatever objection counsel might have raised has no bearing on this Court’s weight-of-the-evidence review, which is mandatory (see People v Patterson, 38 AD3d 431, 432 [2007], lv denied 9 NY3d 868 [2007]). Similarly, this Court “is constrained to weigh the evidence in light of the elements of the crime as charged without objection by defendant” (People v Noble, 86 NY2d 814, 815 [1995]).
As this Court noted in People v Lane (93 AD2d 92, 98 [1983], lv denied 59 NY2d 974 [1983]), effective assistance of counsel means adequate, not perfect, assistance. “The principle, however, does not require that counsel be held accountable to a standard of clairvoyance, to anticipate disposition as to novel issues well in advance of consideration by any appellate court, in the State” (id. at 99). In short, the adequacy of counsel’s representation cannot be measured in retrospect by judging the merits of a motion made in 2004 under a legal standard that was not established until 2006.
Accordingly, the order of Supreme Court, Bronx County (Martin Marcus, J.), entered April 3, 2009, which summarily denied defendant’s motion to vacate the judgment, same court and Justice, rendered May 11, 2004, convicting him, after a jury trial, of murder in the second degree, and sentencing him to a term of 18 years to life, should be affirmed.
Sweeny, Moskowitz, Acosta and Abdus-Salaam, JJ., concur.
*131 Order, Supreme Court, Bronx County, entered April 3, 2009, affirmed.

. Counsel was disbarred by this Court, effective February 10, 2005 (Matter of Stewart, 42 AD3d 59 [2007]), after her conviction of federal conspiracy charges.

. Penal Law § 125.25 (2) provides, in pertinent part, that a person is guilty of murder in the second degree when, “[ujnder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.”
Penal Law § 15.05 (3) provides that “[a] person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk.”