DENNIS JACOBS, Chief Judge,
concurring:
I concur in the panel’s decision to certify questions to the New York Court of Appeals. Answers to those questions will provide clarity and finality to a subject that this Court has frequently revisited. See Epps v. Poole, 687 F.3d 46 (2d Cir.2012); Garbutt v. Conway, 668 F.3d 79 (2d Cir.2012); Parker v. Ercole, 666 F.3d 830 (2d Cir.2012); Rivera v. Cuomo, 664 F.3d 20 (2d Cir.2011); Policano v. Herbert, 507 F.3d 111 (2d Cir.2007). I write separately to emphasize the limited scope of this Court’s review under § 2254, and to register some disagreement with the majority’s exposition of depraved indifference jurisprudence and its retroactive application. The diverging view of New York law expressed in this opinion will, I hope, reinforce the view that clarification is needed from the only source that can be authoritative.
A
In cases challenging the sufficiency of the evidence supporting a state-court criminal conviction, we are not concerned with the state court’s application of state law defining the offense, but with the state court’s application of federal law, and, in this context, the sufficiency standard set forth by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See Epps, 687 F.3d at 50. Even on direct review, the relevant question under Jackson is whether, “after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson, 443 U.S. at 319, 99 S.Ct. 2781. When a case is presented to a federal court in the context of habeas review, and the state court has already passed on the constitutional question, our review is doubly deferential, see Cavazos v. Smith, — U.S. -, 132 S.Ct. 2, 6, 181 L.Ed.2d 311 (2011); Garbutt, 668 F.3d at 81, permitting intervention only where the conviction “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law,” 28 U.S.C. § 2254(d)(1).
As the panel opinion observes, no state appellate court passed on the merits of Gutierrez’s sufficiency challenge. Maj. *269 Op. at 262-63. But the appellate division did hold that the depraved indifference conviction was not against the weight of the evidence, see People v. Gutierrez, 15 A.D.3d 502, 790 N.Y.S.2d 493, 494 (2d Dep’t 2005), which is a more exacting standard of review, see Parker, 666 F.3d at 833; People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). “Therefore, to the extent the Appellate Division decided that [the] conviction was not against the weight of the evidence, it necessarily decided that there was sufficient evidence to support the verdict.” Parker, 666 F.3d at 833. It should follow that the appellate division found that the conviction was not against the weight of the evidence. But that conclusion arguably depends on the state of the law concerning depraved indifference murder, and exactly how the appellate division undertakes weight-of-the-evidence review.[1]
A person is guilty of depraved indifference murder when, “[u]nder circumstances evincing a depraved indifference to human life, he recklessly engaged in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.” N.Y. Penal Law § 125.25(2). Given the record here — witness recollections that were inconsistent and blurred by time and intoxication, and no direct testimony at all about either stabbing (even from the surviving victim) — a considerable range of inference was available to the jury. One such available inference would be depraved indifference murder — unless New York law (then prevailing, or properly made retroactive) is that a one-on-one, face-to-face fatal assault is intentional, categorically.
In the middle of a brawl outside of Rick’s, Gutierrez produced his knife and threatened a group of men. In his written confession, Gutierrez described how he “accidentally stabbed someone” who ran onto his knife (assumably Narcisso Villaplana). From this evidence, a jury could conclude that Gutierrez was wielding his knife with a random menace that demonstrated deliberate indifference to human life.
After stabbing Narcisso, Gutierrez and three others pursued or dragged John Villaplana away from the fracas toward a driveway down the road. There is a gap in the evidence until Randall Villaplana’s testimony that he drove up to John, who had already been mortally wounded, but was still on his feet, staggering. The medical examiner testified that John could have remained conscious for several minutes after the stabbing, and ran or moved around during that time period. No one saw Gutierrez stab John.
John suffered a single stab wound to his chest, with two wound tracks. The medical examiner testified at trial that the two wound tracks were consistent either with the knife being partially withdrawn and reinserted or with “the victim moving back, and then the victim for some reason going forward again”; he could not opine which was more likely. So the proper inference to be drawn on our review is that John was the one that moved during the stabbing, or that both John and Gutierrez were changing positions during the stabbing. Hearing this evidence, a jury could *270 doubt that John’s stabbing was intentional, and believe instead that it occurred during a struggle.
In sum, how, where, and why Gutierrez stabbed John remains open to different, reasonable interpretations. Depending on the (unsettled) state of New York law, one interpretation could have been that Gutierrez was acting with deliberate indifference to human life throughout the brawl at Rick’s and the subsequent stabbing of John.
B
The panel opinion recounts in detail a view as to how New York’s depraved indifference law had changed as of the decision in People v. Payne, 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634 (2004). But it relies on that decision’s dicta, not on its facts or holding (or those of People v. Hafeez, 100 N.Y.2d 253, 762 N.Y.S.2d 572, 792 N.E.2d 1060 (2003) and People v. Gonzalez, 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273 (2004)). No prolonged discourse is needed, however, because the New York Court of Appeals best knows what it said, did, and held.
The three depraved indifference cases decided before Gutierrez’s conviction became final {Hafeez, Gonzalez, and Payne) do not compel the conclusion that a one-on-one stabbing or shooting is reliably intentional. True, they involved one-on-one killings; at the same time, however, those killings were unquestionably intentional. In Hafeez, the defendant had plotted the victim’s murder and laid in wait for him, before leaping out, throwing him against a wall, and stabbing him once in the chest. 100 N.Y.2d at 257, 762 N.Y.S.2d 572, 792 N.E.2d 1060. “[T]here exist[ed] no valid line of reasoning that could support a jury’s conclusion that [the] defendant possessed the mental culpability required for depraved indifference murder,” which was at the time recklessness. Id. at 259, 762 N.Y.S.2d 572, 792 N.E.2d 1060. In Gonzalez, the defendant had walked into a barbershop and shot the victim in the chest and head, and after the victim fell to the ground the defendant shot him eight more times in the back and head. 1 N.Y.3d at 465-66, 775 N.Y.S.2d 224, 807 N.E.2d 273. In Payne, the defendant marched over to his neighbor’s house, with whom he was angry, carrying a 12-gauge shotgun, and shot him just below the chest. 3 N.Y.3d at 269, 786 N.Y.S.2d 116, 819 N.E.2d 634. He admitted to shooting his neighbor at trial, but argued that he acted in self-defense. Id. After rejecting the justification defense, the jury had no choice but to conclude that the killing was intentional. Each of those opinions also preserved People v. Sanchez, 98 N.Y.2d 373, 748 N.Y.S.2d 312, 777 N.E.2d 204 (2002), and did not overrule it. See Payne, 3 N.Y.3d at 272, 786 N.Y.S.2d 116, 819 N.E.2d 634; Gonzalez, 1 N.Y.3d at 469, 775 N.Y.S.2d 224, 807 N.E.2d 273; Hafeez, 100 N.Y.2d at 258-59, 762 N.Y.S.2d 572, 792 N.E.2d 1060.
Taken together, Hafeez, Gonzalez, and Payne establish that an intentional murder could not have been done recklessly, the standard articulated in People v. Register, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 (1983), and Sanchez. And they reflect the New York Court of Appeals’ willingness to identify certain factual scenarios that would support a jury’s finding of reckless conduct. However, none of the three cases gave the Court of Appeals an occasion to consider facts like those now before us. Here, although the fatal stabbing was one-on-one and face-to-face, there is sufficient evidence for a jury to find that the defendant did not act with an intent to kill, and that his conduct put others at risk.
*271 Two of our recent cases involving defendants whose convictions became final after Payne upheld depraved indifference convictions in circumstances similar to those of Gutierrez’s crime. In Garbutt v. Conway, 668 F.3d 79 (2d Cir.2012), the defendant had set out to confront his ex-girlfriend. Id. at 80. After intercepting her and her daughter at a bus stop, he stabbed his ex-girlfriend in the arm and chest, and cut the daughter’s jacket. Id. Although the defendant had procedural!/ defaulted and the panel was concerned with whether failure to consider the unreserved claim would result in a fundamental miscarriage of justice, the panel nonetheless concluded that a rational jury “could have found Gar-butt guilty of recklessness manifesting depraved indifference to human life.” Id. at 82. It considered that the jury could have “inferred from the fact that Garbutt ran away before verifying that [the victim] had died that he had not intended to kill her.” Id.
Parker v. Ercole, 666 F.3d 830 (2d Cir.2012), employs a similar analysis. The defendant and his friend Sanchez, after a night of drinking, had stolen the car of the victim (Johnson). Id. at 832. Like this case, what happened next was never entirely clear:
When Johnson and his friend confronted them, a fight broke out and Johnson punched Sanchez in the face, knocking him to the ground. At this point, a witness heard Parker announce “I got something for that nigga” and then heard a “pop” as a single rifle shot was fired from inside the front hallway of a residence across the street from where Johnson was pacing back and forth amidst several other people. Johnson, who was struck by the bullet, ran away and collapsed between a car and a snowbank. His body was not found for several hours and none of Johnson’s friends believed he had been killed in the interim. However, Parker was heard bragging in the meantime that he had shot Johnson. Parker testified on his own behalf and maintained that he was not the shooter.
Id. The panel in Parker concluded that “there was sufficient evidence for a rational trier of fact to find that Parker acted recklessly and with depraved indifference when he shot Johnson, and not with the intent to kill.” Id. at 835.
Depending on the state of New York law, a jury weighing the facts set forth in Part A of this opinion, might reasonably conclude that Gutierrez did not act intentionally. Gutierrez, who had been drinking, wielded his knife during a brawl outside a bar, during which he unintentionally stabbed Narcisso. He then dragged John away from Rick’s, or chased him down the road, where he stabbed John, perhaps during a struggle. When Randall arrived on the scene, he found two men standing next to John “waiting to see how John was gonna react.” The jury could find that Gutierrez’s conduct was inconsistent with an intent to kill. Gutierrez left the scene while John was still standing, when an intentional killer might have finished him off. Gutierrez did not know whether John was living or dead when Gutierrez was later questioned by the police. When asked why he stabbed John, Gutierrez told a detective that he “didn’t know why” he stabbed him. After the stabbing, Gutierrez bragged to a van full of strangers that he was “happy that he had used his knife.” The jury was free to conclude from this evidence that Gutierrez’s conduct was not intentional, but was reckless and took place in circumstances evidencing a depraved indifference to human life — unless New York law precluded such a finding. That is why this certification is important.
*272 C
With regard to the question of retroactive application, I would take at face value the court’s decision in People v. Jean-Baptiste, 11 N.Y.3d 539, 872 N.Y.S.2d 701, 901 N.E.2d 192 (2008): New York’s evolving standard for depraved indifference murder only “applies] to cases brought on direct appeal in which the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction.” Id. at 542, 872 N.Y.S.2d 701, 901 N.E.2d 192 (emphasis added). I think that New York’s procedural default rule is thus built into the rule of retroactivity, so that Payne, People v. Suarez, 6 N.Y.3d 202, 211, 811 N.Y.S.2d 267, 844 N.E.2d 721 (2005), and People v. Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (2006), are not retroactively applicable to cases on direct appeal unless the defendant had objected on the grounds of insufficiency.
There is good reason for such a rule in these depraved indifference murder cases: when a conviction is inadequately supported by the evidence, the appellate divisions of New York’s supreme courts possess the authority to reduce it to a lesser included charge that finds adequate support. See N.Y.Crim. Proc. Law § 470.15(2)(a); People v. Jean-Baptiste, 844 N.Y.S.2d at 72, 73 (2d Dep’t 2007). If Gutierrez was not in fact guilty of depraved indifference murder — and the error had been brought to the attention of that court — the appellate division could have properly reduced his conviction to the lesser included charge of second degree manslaughter.
The rationale advanced by the New York Court of Appeals for the change completed by Feingold is consistent with a rule limiting retroactive application to cases in which a proper objection was made at trial. In Policano v. Herbert, 7 N.Y.3d 588, 825 N.Y.S.2d 678, 859 N.E.2d 484 (2006), the New York Court of Appeals recounted three considerations to be weighed when deciding whether to apply a new principle retroactively: “the purpose to be served by the new standard; the extent of the reliance by law enforcement authorities on the old standard; and the effect on the administration of justice of a retroactive application of the new standard.” Id. at 603, 825 N.Y.S.2d 678, 859 N.E.2d 484.
The “purpose to be served by the new standard” is the most important consideration. In the present context, that purpose “is to dispel the confusion between intentional and depraved indifference murder” and to “make future homicide prosecutions more sustainable, increasing the likelihood that defendants who are proven beyond a reasonable doubt to have committed intentional murder will be properly held to account for that crime.” Id. at 603-04, 825 N.Y.S.2d 678, 859 N.E.2d 484 (internal quotation marks omitted, emphasis added). Retroactive application to a defendant who did not make a proper insufficiency challenge runs counter to that objective. Applying the principles of Hafeez, Gonzalez, and Payne to Gutierrez’s trial, which took place in 2001, would do less than nothing to make “future homicide prosecutions more sustainable.” Such application would severely undermine prosecutors’ reliance on the standard (established in Register), which had been consistently applied for 20 years. Id. at 604, 825 N.Y.S.2d 678, 859 N.E.2d 484 (“For two decades prosecutors relied on Register's objectively determined degree-of-risk formulation when making their charging decisions.”)
Retroactive application here would also frustrate the efficient “administration of justice,” by opening an avenue for habeas relief when the defendant failed to raise an *273 objection in courts that could have obviated the problem. Moreover, as the New York Court of Appeals has drily observed, “[djefendants who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attractive candidates for collateral relief after their convictions have become final.” Suarez, 6 N.Y.3d at 217-18, 811 N.Y.S.2d 267, 844 N.E.2d 721.
But, all this said, we cannot be certain that the Court of Appeals sees its law that way. Hence, my concurrence in this certification.
* * *
The panel poses two important questions to the New York Court of Appeals. I suggest that those questions be supplemented as follows:
1. For the circumstances of a crime to evince depraved indifference — as of September 12, 2005, when the defendant’s conviction became final — must the threat and danger to others inhere in the very gesture that inserts the knife or fires the gun point-blank, or is it enough that defendant endangered a group with his weapon, but then singled out for attack, at random, one victim from the threatened group of persons?
2. Does the evolving standard of depraved indifference law, as it existed on the day defendant’s conviction became final, apply retroactively to a defendant who did not preserve an objection to the sufficiency of his depraved indifference murder conviction; or, consistent with People v. Jean-Baptiste, 11 N.Y.3d, 539, 872 N.Y.S.2d 701, 901 N.E.2d 192 (2008), is the retroactive application limited to “cases brought on direct appeal in which the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction,” id. at 542, 872 N.Y.S.2d 701, 901 N.E.2d 192.

. There is some authority in New York for the proposition that weight-of-the-evidence review is measured against only the jury charge given without defendant's objection. See People v. Danielson, 40 A.D.3d 174, 832 N.Y.S.2d 546, 550 (1st Dep’t 2007). However, in Parker, a panel found that this type of review was sufficient to require deference to the appellate division’s conclusion as if it had reviewed the jury’s verdict for sufficiency of the evidence. See Parker, 666 F.3d at 833. Gutierrez has also taken the position that New York law requires Payne be applied to the appellate division's weight-of-the-evidence review.