■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN MANNIX, Appellant. [756 NYS2d 33] —Judgment, Supreme Court, New York County (Charles Tejada, J.), rendered November 13, 2000, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the third degree, and sentencing him to concurrent terms of 18 years to life and five years, respectively, unanimously affirmed.

Contrary to defendant's contention, Penal Law § 125.25 (2), which defines "depraved indifference" murder, is not unconstitutionally vague (*People v Johnson*, 87 NY2d 357, 361; *People v Cole*, 85 NY2d 990). Depraved indifference murder and second-degree manslaughter remain separate crimes, both facially and as interpreted (*People v Sanchez*, 98 NY2d 373). In any event, the Supreme Court of the United States "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." (*United States v Batchelder*, 442 US 114, 123-124; *see also People v Eboli*, 34 NY2d 281.)

The verdict convicting defendant of depraved indifference murder was based on legally sufficient evidence and was not against the weight of the evidence (*see e.g. People v Kanelos*, 107 AD2d 764; *compare People v Magliato*, 110 AD2d 266, *affd* 68 NY2d 24). The evidence warranted the conclusion that defendant knowingly and deliberately fired a pistol through a door into a small, enclosed space containing the victim and a bystander. Moreover, shortly after the crime, defendant called

the bar where the shooting had taken place to ask "did I hit anyone?" Upon hearing an affirmative response, defendant replied, "Good." This evidence permitted the inference that the discharge of the pistol was no accident, and that defendant had acted with depraved indifference to human life.

Since the court submitted the lesser included offense of second-degree manslaughter but the jury convicted defendant of second-degree murder, the court's refusal to charge the more remote lesser included offense of criminally negligent homicide cannot be a basis for reversal (*People v Boettcher*, 69 NY2d 174, 180-181; *People v Villa*, 162 AD2d 969, *lv denied* 76 NY2d 945; *People v Kanelos*, 107 AD2d at 764). The *Boettcher* rule is clearly applicable to this case and we reject defendant's various arguments to the contrary.

During defendant's cross-examination of a prosecution witness, the court properly exercised its discretion in refusing to direct the witness to divulge the names of certain patrons of the bar where the shooting occurred, since, under the circumstances of the case, this information was collateral to any material issue (*see People v Aska*, 91 NY2d 979). Defendant's argument that the court's rulings violated his right of confrontation is unpreserved (*see People v Kello*, 96 NY2d 740, 743-744; *People v Eleby*, 288 AD2d 50, *lv denied* 97 NY2d 753), and we decline to review it in the interest of justice. Were we to review this claim, we would find that the Confrontation Clause was not violated because, as noted, the names of the bar patrons were collateral to defendant's defense, and because defendant had ample opportunity to impeach this witness's credibility (*see Delaware v Van Arsdall*, 475 US 673, 678-679; *Bagby v Kuhlman*, 932 F2d 131, *cert denied* 502 US 926).

Since his objection to the impeachment was made on completely different grounds, defendant's argument that the People should not have been permitted to impeach their own witness with his grand jury testimony because the trial testimony that was unfavorable to the People was elicited only during cross-examination is unpreserved (*People v Reid*, 298 AD2d 191), and we decline to review it in the interest of justice. Were we to review this claim, we would reject it because the unfavorable testimony was, in fact, elicited during direct examination, thereby satisfying that foundational requirement for impeachment of one's own witness (*see* CPL 60.35 [1]).

A statement by a nontestifying declarant that the gunman "went that way" was properly admitted to complete the narrative of events. It was not prejudicial because it did not tend to prove that defendant was the assailant; a witness testified that other people left the bar at about the same time as defendant.

We have considered and rejected defendant's remaining claims. Concur—Tom, J.P., Andrias, Sullivan, Friedman and Marlow, JJ.