10-4478-pr
Gutierrez v. Smith

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: February 17, 2012      Decided: August 31, 2012)

Docket No. 10-4478-pr

_____

OMAR GUTIERREZ,

*Petitioner-Appellant*,

– v. –

JOSEPH SMITH,

*Respondent-Appellee*.

_____

Before: JACOBS, *Chief Judge*, CALABRESI and POOLER, *Circuit Judges*.

Omar Gutierrez appeals from the denial of a petition for a writ of habeas corpus in which he argued that the evidence at trial was insufficient to support his conviction for depraved indifference murder under New York law. We conclude that the district court (Feuerstein, *J.*), of the Eastern District of New York, erred in denying the petition as procedurally barred, but that the merits of the underlying legal insufficiency claim turn on significant and unsettled questions of New York law, which we certify to the New York Court of Appeals as stated in Part II.B of this opinion.

*Chief Judge* JACOBS concurs in a separate opinion.

> JACQUELINE P. RUBIN (Janna Berke, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, N.Y., *for Petitioner-Appellant*.
>
> GLENN GREEN, Assistant District Attorney, *for* Thomas J. Spota, District Attorney, Suffolk County, Riverhead, N.Y., *for Respondent-Appellee*.

_____

CALABRESI, *Circuit Judge*:

During a bar brawl, Petitioner-Appellant Omar Gutierrez chased John Villaplana and fatally stabbed him in the chest. Gutierrez was convicted of depraved indifference murder under New York Penal Law § 125.25(2), and sentenced to twenty-five years to life in prison. After the Appellate Division affirmed Gutierrez's conviction and his application for leave to appeal to the New York Court of Appeals was denied, Gutierrez filed a timely petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York. In his petition, Gutierrez argued, *inter alia*, that the evidence introduced at trial was legally insufficient to support his conviction. The district court (Feuerstein, *J.*), relying on the state court's finding that counsel failed to make a contemporaneous objection at trial to the legal sufficiency of the evidence, dismissed the petition as procedurally barred. We hold that, though the claim was procedurally defaulted, it is nonetheless cognizable on habeas review. Since there was a fundamental shift in New York's interpretation of its depraved indifference murder statute between the time of Gutierrez's trial in 2001 and the time his conviction became final in 2005, the legal basis for a sufficiency challenge was not reasonably available to counsel at the time of trial, establishing "cause" for the failure to object. Accordingly, we REVERSE the district court's dismissal of the petition.

Our review of the merits of Petitioner's claim, however, brings unsettled issues of New York law to the forefront: (a) just how much of what kind of evidence supports depraved indifference convictions in New York, and (b) whether the change in New York's law on depraved indifference murder applies retroactively to defendants like Gutierrez. Because we believe the New York Court of Appeals should be given the opportunity to

2

address these recurring and important questions of New York State law, we CERTIFY them to the New York Court of Appeals.

## I.    BACKGROUND

### A. Factual Background and Procedural History

The facts are not in dispute. On June 13, 1999, Petitioner was involved in a bar brawl in Montauk, Long Island. Gutierrez was at Rick's Crabby Cowboy Café ("Rick's") when a fight broke out between different groups of patrons. The fight escalated and later continued outside the bar into Rick's parking lot where Gutierrez stabbed Narcisso Luis Villaplana. Gutierrez then pursued John Villaplana to a nearby driveway. There, Gutierrez fatally stabbed John Villaplana in his chest, producing two wound tracks. The presence of two wound tracks might be the result of a retraction and reinsertion of the knife, but could also indicate "the victim moving back, and then the victim for some reason going forward again." According to trial testimony, Gutierrez fled the scene when a car approached, while Villaplana was still on his feet. The first wound, which passed through Villaplana's heart, was three and three-quarters inches deep, and the second, which pierced his lung, was two and three-quarters inches deep. Though Villaplana also sustained an injury as a result of striking his head on the ground, autopsy results confirmed that a stab wound caused his death.

Gutierrez was charged with: (a) murder in the second degree in violation of New York Penal Law § 125.25(1) (intentional murder) and New York Penal Law § 125.25(2) (depraved indifference murder) in connection with John Villaplana's fatal stabbing, and (b) assault in the third degree in violation of New York Penal Law § 120.00(2) in connection with Narcisso Luis Villaplana's stabbing. At trial, Gutierrez's counsel moved to dismiss the

3

depraved indifference murder charge, on the ground that, "as a matter of law, . . . there [was] insufficient evidence to prove a prima facie case." The trial judge denied the motion, and the jury convicted Gutierrez of depraved indifference murder and assault in the third degree, but acquitted him of intentional murder. Gutierrez was sentenced to an indeterminate term of imprisonment of twenty-five years to life on the depraved indifference conviction and to a concurrent determinate term of imprisonment of one year on the assault conviction.

On direct appeal, Petitioner argued, *inter alia*, that there was insufficient evidence to support a depraved indifference murder conviction and that New York Penal Law § 125.25(2) was unconstitutionally vague. On February 14, 2005, the Appellate Division affirmed Gutierrez's conviction and sentence, concluding that his legal insufficiency claim was "unpreserved for appellate review," and that some of Gutierrez's other contentions were "either . . . unpreserved for appellate review or without merit." *People v. Gutierrez*, 15 A.D.3d 502, 503 (N.Y. App. Div. 2d Dep't 2005). On June 14, 2005, Judge Smith, of the New York Court of Appeals, denied Gutierrez's application for leave to appeal to that court. *See People v. Gutierrez*, 5 N.Y.3d 763 (2005).

On September 12, 2006, pursuant to New York Criminal Procedure Law § 440.10, Gutierrez filed a motion to vacate his conviction. After the trial court denied the motion, *see People v. Gutierrez*, 836 N.Y.S.2d 488 (Suffolk Cnty. Ct. 2007) (unpublished table decision), and the Appellate Division affirmed, *see People* v. *Gutierrez*, 57 A.D.3d 1006 (N.Y. App. Div. 2d Dep't 2008), Judge Smith of the New York Court of Appeals once again denied Gutierrez's application for leave to appeal to that court, *see People v. Gutierrez*, 12 N.Y.3d 816 (2009).

4

On September 12, 2006, Gutierrez also filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court initially stayed the proceedings to permit Gutierrez to pursue his section 440.10 motion, after which Gutierrez filed an amended petition, arguing: (1) that the evidence presented at trial was legally insufficient to support his conviction for depraved indifference murder; (2) that his trial counsel was ineffective for failing to make a specific objection to the legal insufficiency of the evidence at trial; and (3) that New York Penal Law § 125.25(2) was unconstitutionally vague. *See Gutierrez v. Smith*, No. 06-CV-4939, 2010 U.S. Dist. LEXIS 102137, at *8 (E.D.N.Y. Sept. 27, 2010). In September 2010, the district court denied Gutierrez's petition and declined to issue a certificate of appealability. *See id.* at *30-*31. On March 16, 2011, we granted Gutierrez's motion for a certificate of appealability "with respect to [Gutierrez's] claim that the evidence was legally insufficient to support his conviction for depraved indifference murder in violation of New York Penal Law § 125.25(2)."

**B. The Evolution of "Depraved Indifference" Law in New York**

"Depraved indifference" murder is a type of second degree murder in New York. Specifically, New York Penal Law § 125.25(2) provides that a person is guilty of murder in the second degree when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." At the time of Gutierrez's trial in 2001, the law on depraved indifference murder was governed by *People v. Register*, 60 N.Y.2d 270 (1983). In *Register*, the defendant entered a crowded bar with a loaded gun. *Id.* at 273. After entering the bar and threatening to "kill somebody," *id.* at 275, he ultimately killed one man and seriously injured two others, *id*. at 273-74. The Court of Appeals announced that the

5

requisite *mens rea* for depraved indifference murder was "recklessness," *id.* at 278, and held that the crime required a showing of "circumstances evincing a depraved indifference to human life," *id.* at 274 (quoting N.Y. Penal Law § 125.25(2)). In upholding the trial court's refusal to instruct the jury that the defendant's intoxication could negate a showing of depraved indifference, the Court noted that "the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct." *Id.* at 277 (citation omitted). In that vein, the Court reasoned that "depraved mind murder is distinguishable from manslaughter, not by the mental element involved but by the objective circumstances in which the act occurs." *Id.* at 278.

According to the Court of Appeals, the law as articulated in *Register* "remained static" until its decision in *People v. Sanchez*, 98 N.Y.2d 373 (2002). *Policano v. Herbert*, 7 N.Y.3d 588, 595 (2006). Critically, *Sanchez* was decided in 2002, after Gutierrez's trial and conviction. In *Sanchez*, a 4–3 decision that produced three dissents, a divided Court of Appeals rejected the defendant's argument that his conduct "was consistent only with an intentional killing" and therefore could not sustain a conviction for depraved indifference murder. 98 N.Y.2d at 376. The Court thus reaffirmed *Register*, reiterating that "the requirement of circumstances evincing a depraved indifference to human life under [New York] Penal Law § 125.25 (2) murder focuses not on the subjective intent of the defendant, 'but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct.'" *Id.* at 379-80 (quoting *Register*, 60 N.Y.2d at 277). But *Sanchez*, in time, proved more notable for the presence of the three separate dissents in the seven person Court of Appeals, than for its majority opinion. The dissents, emphasizing "the problems

attendant to using a charge of depraved indifference as a proxy for intentional murder," *id.* at 388 (Smith, J., dissenting), would have "overrule[d] *Register* expressly and restore[d] depraved indifference as the key mens rea element," *id.* at 415 (Rosenblatt, J., dissenting).

After *Sanchez*, New York law continued to evolve while Gutierrez's case was on direct appeal. Three cases in particular—*People v. Hafeez*, 100 N.Y.2d 253 (2003), *People v. Gonzalez*, 1 N.Y.3d 464 (2004), and *People v. Payne*, 3 N.Y.3d 266 (2004)—all decided before Gutierrez's conviction became final on September 12, 2005,[1] moved New York law away from the holding in *Register* as reaffirmed by a bare majority in *Sanchez*. In *Hafeez*, decided on June 10, 2003, which involved yet another incident at a bar, the Court of Appeals held that a codefendant's "conduct was consistent with intentional murder as opposed to depraved indifference murder." 100 N.Y.2d at 258. In *Gonzales*, decided on March 25, 2004, the court again found the evidence legally insufficient to support a conviction for depraved indifference murder, holding that "[t]he only reasonable view of the evidence here was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the ground." 1 N.Y.3d at 467. The Court reasoned that "a person cannot act both intentionally and recklessly with respect to the same result," *id.* at 468; that when "a defendant's conduct is specifically designed to cause the death of the victim, it simply cannot be said that the defendant is indifferent to the consequences of his or her conduct," *id.* at 467. The Court went further and explained that "[d]epraved indifference murder does not mean an extremely, even heinously, intentional killing," but instead "involves a killing in which the defendant does not have a conscious

---

[1] In New York, a petitioner's conviction becomes final ninety days after leave to appeal to the Court of Appeals is denied. *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). Here, the Appellate Division affirmed Gutierrez's conviction on February 14, 2005, and Judge Smith of the Court of Appeals denied leave to appeal to that court on June 14, 2005.

objective to cause death but instead is recklessly indifferent, depravedly so, to whether death occurs." *Id.* at 468.

Finally, *Payne*, decided on October 19, 2004, which involved a shooting at point-blank range, firmly established the principle that "[a]bsent the type of circumstances in, for example, *Sanchez* (where others were endangered), a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder." 3 N.Y.3d at 272. Focusing on the difference between depraved indifference murder and intentional murder, the Court held that "[t]he use of a weapon can never result in depraved indifference murder when . . . there is a manifest intent to kill." *Id.* at 271. Further, it noted that "[f]iring more rounds or inflicting more wounds does not make the act more depravedly *indifferent*, but more intentional." *Id.* at 272.

After Gutierrez's conviction became final on September 12, 2005, the law moved even further in the same direction. *People v. Suarez*, decided on December 22, 2005, underscored *Payne* and held that "a defendant who intends to injure or kill a particular person cannot generally be said to be 'indifferent'—depravedly or otherwise—to the fate of that person." 6 N.Y.3d 202, 211 (2005). Finally, the development which began with the dissents in *Sanchez* culminated in *People v. Feingold*, decided on July 5, 2006. 7 N.Y.3d 288 (2006). There, the Court of Appeals expressly overruled *Register* and *Sanchez* and concluded that depraved indifference referred to a mental state. *Id.* at 294. In other words, the Court held that a jury could not rely solely on objective circumstances to support a conviction for depraved indifference murder. Surveying its case law beginning with *Hafeez*, the Court concluded that "the law ha[d] changed to such an extent" that *Register* and *Sanchez* "should no longer be followed." *Id.*

8

## II.  DISCUSSION

The Court reviews a district court's ruling on a habeas petition *de novo*. *See Thibodeau v. Portuondo*, 486 F.3d 61, 64 (2d Cir. 2007).

### A. Procedural Default

New York's contemporaneous objection rule requires a party to object to what he or she believes is a legal error in a trial court's ruling or instruction "at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). Where a party fails to lodge such a contemporaneous objection, the issue is unpreserved for appeal because of the party's procedural default. "If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with such a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) (citing *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977)); *see also Harris v. Reed*, 489 U.S. 255, 260 (1989) (explaining that federal habeas review is barred if the constitutional claim was denied by a state court on a state procedural "ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision").

The Supreme Court, however, has carved out two exceptions to this bar on habeas review of procedurally defaulted claims. "Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006) (brackets omitted) (quoting

9

*Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986).

Gutierrez concedes that his counsel lodged only a general objection to the legal sufficiency of the evidence at trial, *Gutierrez*, 2010 U.S. Dist. LEXIS 102137, at *4 n.3, which the Appellate Division deemed insufficient to preserve the issue for appellate review, *Gutierrez*, 15 A.D.3d at 503. On habeas review, therefore, we can only reach the merits of Gutierrez's legal insufficiency claim if he can establish either "cause" and "prejudice" or "actual innocence." We conclude that Gutierrez adequately demonstrates "cause" for his trial counsel's failure to lodge a specific objection and "prejudice" from that failure.[2]

There are two related ways to establish "cause." First, if some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule, the cause requirement is met. *See McCleskey v. Zant*, 499 U.S. 467, 493 (1991). An example of such an objective impediment is "a showing that the factual or legal basis for a claim was not reasonably available to counsel" at the time of trial. *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999). Relatedly, futility may constitute cause "where prior state case law has consistently rejected a particular constitutional claim." *DiSimone*, 461 F.3d at 191. But "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)) (internal quotation marks omitted).

---

[2] For purposes of this case, we are assuming arguendo that the contention of actual innocence made by Petitioner would fail. We do this because we find cause and prejudice and need not find a successful claim of actual innocence in order to excuse the procedural bar. We note, however, that the issue of actual innocence in circumstances like the one before us has been treated differently by various federal courts. *See generally Schlup v. Delo*, 513 U.S. 298 (1995). *Compare Johnson v. Bellnier*, No. 09-CV-00381 (KAM) (RER), 2011 U.S. Dist. LEXIS 82104, at *30-*44 (E.D.N.Y. July 27, 2011), *and Fernandez v. Smith*, 558 F. Supp. 2d 480, 494 (S.D.N.Y. 2008), *with Gutierrez v. Smith*, No. 06-cv-4939, 2010 U.S. Dist. LEXIS 102137, at *23-*30 (E.D.N.Y. Sept. 27, 2010), *and Orcutt v. Fillion*, No. 09-cv-205, 2010 U.S. Dist. LEXIS 66962, at *14-*17 (N.D.N.Y. June 9, 2010), *report and recommendation adopted by* 2010 U.S. Dist. LEXIS 66975 (N.D.N.Y. July 6, 2010).

The "prejudice" requirement is met by establishing "actual prejudice resulting from the errors of which [Petitioner] complains." *United States v. Frady*, 456 U.S. 152, 168 (1982) (internal quotation marks omitted). The error must have resulted in "substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *Frady*, 456 U.S. at 170) (internal quotation mark omitted).

On appeal, Gutierrez offers two explanations for counsel's failure to object specifically to the legal sufficiency of his depraved indifference murder conviction. First, he argues that any objection by counsel would have been futile because the controlling law, *i.e.*, *Register*, would have rendered the objection baseless. Second, he asserts that the legal basis of his claim was unavailable at the time of trial and that this constituted an objective factor external to his defense.

These "cause" arguments are both predicated on the claim (a) that New York law on depraved indifference murder changed drastically after Gutierrez's trial in 2001, and (b) that he should not be penalized for his failure to anticipate that change. We had occasion to consider a virtually identical argument in *DiSimone*, where the petitioner argued "that it would have been futile to make an insufficiency argument on direct appeal," 461 F.3d at 191, and more recently in *Brown v. Ercole*, 353 F. App'x 518, 519 (2d Cir. 2009) (summary order). In both cases we rejected the argument, finding that "cause" could not be established. Indeed, the district court in the instant case, in declining to reach the merits of Gutierrez's claim, relied on our decision in *Brown*. But there is a fundamental difference between *DiSimone* and *Brown*, on one side, and the case before us, on the other. It is, quite simply, that Gutierrez's trial occurred in 2001, before *Sanchez* was decided, while counsel in *DiSimone* and *Brown* had the benefit of *Sanchez*.

11

In *DiSimone*, we explicitly noted that, at the time of the petitioner's appeal, *Sanchez* had produced three separate dissents, providing a legal basis to counsel for a sufficiency challenge. *DiSimone*, 461 F.3d at 191. At the time of Brown's trial, in addition to *Sanchez*, at least two New York appellate courts, *see Hafeez*, 100 N.Y.2d at 258-59; *People v. Gonzalez,* 302 A.D.2d 870, 871-72 (N.Y. App. Div. 4th Dep't 2003), had reversed depraved indifference murder convictions on grounds that subsequently came to reflect New York law on depraved indifference murder. For these reasons, we held that counsel in both *DiSimone* and *Brown* were on notice that the law was no longer static and that counsel could reasonably have argued that the evidence presented by the state in their cases was legally insufficient to support a conviction for depraved indifference murder.

In stark contrast, Gutierrez's trial was held in 2001, before *Sanchez* was decided, before the appellate courts reversed the convictions in *Hafeez* and *Gonzalez*, and when *Register* was unquestionably still considered the law of New York. Given that the *Register* interpretation was firmly ingrained in New York at the time of Petitioner's trial in 2001, any legal sufficiency objection by Gutierrez would have been legally futile.

Similarly, we hold that the legal basis for a sufficiency claim was not available to counsel at the time of Gutierrez's trial as *Register* still controlled. When Gutierrez was tried, counsel could not be obliged to challenge preemptively the conviction based on what then was a totally unforeseeable development in the law. The shift in New York law that occurred after Petitioner's trial constituted an "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler*, 527 U.S. at 283 n.24; *see also id.* ("not[ing] that a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . would constitute cause under this standard").

12

Accordingly, Gutierrez establishes "cause" for counsel's failure to make a contemporaneous objection at trial.

The "prejudice" requirement is also met. The difference between a conviction for murder in the second degree and one for manslaughter is substantial, the former carrying a significantly higher potential term of imprisonment. Thus, the submission of a depraved indifference murder charge to the jury worked to Petitioner's "actual and substantial disadvantage," *Roccisano v. Menifee*, 293 F.3d 51, 59 (2d Cir. 2002) (emphasis omitted), because it allowed the jury to convict him of a crime for which the availability of legally sufficient evidence was dubious at best. *See Reed v. Ross*, 468 U.S. 1, 12 (1984). Indeed, it is still dubious enough to justify our certifying the question, in this case, to the New York Court of Appeals.

**B. Merits of Gutierrez's Legal Insufficiency Claim**

"[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). When considering the sufficiency of the evidence of such a state conviction, a federal court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor," and, in doing this, "must look to state law to determine the elements of the crime." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

The change in New York law on depraved indifference murder has created a series of problems for federal courts on habeas review. Since the questions these cases raise are ones that are profoundly of New York law, when New York courts have spoken on the merits of

13

a conviction for depraved indifference murder and on whether the evidence in a particular case was legally sufficient, we have tended to defer to that judgment. *See, e.g.*, *Epps v. Poole*, 2012 U.S. App. LEXIS 12795, at *3-*4 (2d Cir. June 21, 2012). We have done so because, ultimately, how New York wishes to define depraved indifference murder is a question for New York. Difficulties arise, however, when, as in this case, New York affirms the conviction on procedural grounds that are not in keeping with federal requirements. For then we are left to judge a conviction that New York courts have not evaluated on the merits.[3]

And the merits of depraved indifference cases are hard to resolve in the first instance given the current state of New York law. There is, however, a way for us to become better informed as to how New York views a case like this one. New York law—in tandem with Second Circuit Local Rule 27.2(a)—permits us to certify to New York's highest court "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a). We believe that this case presents issues as to which guidance from New York's highest court would be helpful.

There are two questions as to which the highest court of New York has previously spoken in ways that would suggest that Gutierrez's conviction cannot stand on the merits, but as to which lower New York courts have reacted in ways that leave us in doubt as to what New York law really is. The most important of these questions goes to just how much

---

[3] The concurring opinion suggests that the rejection of Gutierrez's weight of the evidence claim in state court could be viewed as a judgment by New York courts on whether the evidence is legally sufficient. Would that were so. Under New York law, it appears that the decision on the weight of the evidence was limited to the law as it existed at the time of trial, and did not take into account the subsequent change in New York's depraved indifference law. Accordingly, and unfortunately, the record before us does not disclose a state court determination on the merits to which we can accord deference.

14

of what kind of evidence is sufficient to convict a defendant of depraved indifference murder. We have no doubt that, applying the law at the time of Gutierrez's trial as articulated in *Register*, there was sufficient evidence to sustain a conviction for depraved indifference murder. But applying the law at the time Gutierrez's conviction became final, the result is much less clear.[4] At the latter time, Petitioner gets the benefit of *Hafeez*, of *Gonzalez*, and, most notably, of *Payne*.

*Payne* instructs that "a one-on-one shooting *or knifing* . . . can almost never qualify as depraved indifference murder." 3 N.Y.3d at 272 (emphasis added). Gutierrez argues that, by stabbing a single individual in the chest, he engaged in intentional conduct inconsistent with the *mens rea* for depraved indifference murder. As the State points out, however, there are additional considerations at play in the case before us: there was ongoing animus between different groups of patrons at the bar on the night of the stabbings, a violent fight broke out involving several individuals, Gutierrez chased and stabbed another individual just minutes before the fatal stabbing, and Gutierrez had no prior relationship or personal disagreement with either victim. We are not sure whether New York would view these facts as sufficient to support a jury finding of reckless conduct consistent with depraved indifference murder. Moreover, since New York never evaluated Gutierrez's claim on the merits, there might very well be other facts that support Appellee's assertion that Gutierrez acted recklessly that

---

[4] The State argues that at the time Gutierrez's conviction became final on September 12, 2005, the *Register* standard controlled, because the law on deliberate indifference murder only changed in *Feingold*, which was decided in 2006. But both this court and the New York Court of Appeals have rejected the notion that *Feingold* changed the law. *See Henry v. Ricks*, 578 F.3d 134, 139 (2d Cir. 2009); *Policano*, 7 N.Y.3d at 602-03. *Feingold* merely made explicit what *Hafeez*, *Gonzalez*, and *Payne* had already accomplished. Indeed, in *Policano*, the Court of Appeals acknowledged that prior cases, beginning with *Hafeez*, represented "a perceptible, evolving departure from the underpinnings of depraved indifference murder as expressed in *Register* and *Sanchez*." 7 N.Y.3d at 603.

15

night. As a result, we seek guidance from New York on whether Gutierrez's conduct suffced to allow a jury to convict him of depraved indifference murder.

Another question also troubles us: Who gets the benefit of the change in New York's interpretation of its depraved indifference murder statute? We are not completely certain whether the law articulated in *Payne* (and ultimately, *Feingold*) applies retroactively to defendants tried at the time *Register* controlled but whose appeals were not yet final when those decisions were handed down, or whether it only applies prospectively to those defendants tried and sentenced after the decisions were rendered. This question, on its own, would not be worth certifying because the Court of Appeals has spoken on the issue. In *Feingold* itself, though the defendant had been convicted in November 2004, the Court of Appeals applied the new interpretation of the depraved indifference statute to that defendant. 7 N.Y.3d at 296-97. More than two years after *Feingold*, in *People v. Jean-Baptise*, 11 N.Y.3d 539 (2008), the Court of Appeals confronted the question of "whether . . . *Feingold* applies only prospectively to those defendants sentenced after that decision was rendered or whether that decision should apply to cases, such as the one now before us, which are pending on direct appeal." *Id.* at 542. The Court held that "the standard as articulated in *Feingold* should apply to cases brought on direct appeal in which the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction." *Id.*

*Jean-Baptiste* notwithstanding, New York courts continue to wrestle with the question of the retroactive application of *Feingold*. Most recently, in *People v. Snyder*, 91 A.D.3d 1206 (N.Y. App. Div. 3d Dep't 2012), the Appellate Division, Third Department, though unanimously affirming the defendant's conviction, split three to two on whether the

16

defendant was entitled to review under *Feingold* or *Register*. The majority, citing *Jean-Baptise*, concluded that because the "[d]efendant's direct appeal was pending when [the] change in the law occurred," the legal sufficiency claim should be decided "in accord with the law as it now exists [as stated in *Feingold*]." *Snyder*, 91 A.D.3d at 1211 (citing *Jean-Baptiste*, 11 N.Y.3d at 541-42). The concurrence, though acknowledging *Jean-Baptise*, disagreed, concluding that "the legal sufficiency of the evidence supporting [the defendant's] convictions should be reviewed in light of the law as it existed at the time of trial." *Id.* at 1215-16 (Stein, J., concurring). In view of the existence of this very close decision in which the concurrence cited and, in effect, deemed inapplicable what the Court of Appeals seemed to have said in *Jean-Baptiste*—and given that we are certifying the case on the issue of the sufficiency of the evidence—we seek guidance on this question as well.

We believe that these two questions of New York law are best left to New York. Resolution of these questions "requires value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make," *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 42 (2d Cir. 2010); the relevant New York cases make it difficult for us "to predict how the Court of Appeals would resolve" these questions, *id.*; and these questions are "determinative of [the] claim before us," *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007) (internal quotation mark omitted). We therefore offer the New York Court of Appeals the opportunity to guide us, should it opt to do so. Should the New York Court of Appeals choose to grant certification, we, as we always do when we certify, invite it to address any other issues it deems germane to the questions certified. And in particular, we invite the Court of Appeals to address the questions posed in Chief Judge Jacobs' concurring opinion.

Let us be clear: We, as a federal court, are reluctant to release defendants whose defense to depraved indifference murder is that they were guilty of intentional murder, where those defendants were acquitted of intentional murder and convicted of depraved indifference murder at a time when New York seemed to permit this. We will, of course, follow the law of New York. But before we order the release of such defendants, we wish to be sure that this is the result New York wants.

### III.    CONCLUSION

For the foregoing reasons, we REVERSE the district court's finding that Petitioner's legal insufficiency claim was procedurally defaulted. But since resolution of the merits of that claim turns on unresolved and recurring issues of New York state law, we certify the following questions to the New York Court of Appeals:

QUESTIONS CERTIFIED:

(1) Is the defendant's conduct in this case sufficient to convict him of depraved indifference murder?

(2) Does *People v. Payne* apply retroactively to defendants convicted of depraved indifference murder when *People v. Register* still controlled, but whose appeals were still pending when *Payne* was decided?

It is hereby Ordered that the Clerk of Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals, or once that court declines certification.

REVERSED in part. Decision RESERVED in part.

18

DENNIS JACOBS, Chief Judge, concurring:

I concur in the panel's decision to certify questions
to the New York Court of Appeals.  Answers to those
questions will provide clarity and finality to a subject
that this Court has frequently revisited.  See Epps v.
Poole, 687 F.3d 46 (2d Cir. 2012); Garbutt v. Conway, 668
F.3d 79 (2d Cir. 2012); Parker v. Ercole, 666 F.3d 830 (2d
Cir. 2012); Rivera v. Cuomo, 664 F.3d 20 (2d Cir. 2011);
Policano v. Herbert, 507 F.3d 111 (2d Cir. 2007).  I write
separately to emphasize the limited scope of this Court's
review under § 2254, and to register some disagreement with
the majority's exposition of depraved indifference
jurisprudence and its retroactive application.  The
diverging view of New York law expressed in this opinion
will, I hope, reinforce the view that clarification is
needed from the only source that can be authoritative.

**A**

In cases challenging the sufficiency of the evidence
supporting a state-court criminal conviction, we are not
concerned with the state court's application of state law
defining the offense, but with the state court's application
of federal law, and, in this context, the sufficiency

standard set forth by the Supreme Court in <u>Jackson v.</u>
<u>Virginia</u>, 443 U.S. 307 (1979). <u>See</u> <u>Epps</u>, 687 F.3d at 50.
Even on direct review, the relevant question under <u>Jackson</u>
is whether, "after viewing the evidence in the light most
favorable to the prosecution, *any* rational trier of fact
could have found the essential elements of the crime beyond
a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319. When a case
is presented to a federal court in the context of habeas
review, and the state court has already passed on the
constitutional question, our review is doubly deferential,
<u>see</u> <u>Cavazos v. Smith</u>, 132 S. Ct. 2, 6 (2011); <u>Garbutt</u>, 668
F.3d at 81, permitting intervention only where the
conviction "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law," 28 U.S.C. § 2254(d)(1).

As the panel opinion observes, no state appellate court
passed on the merits of Gutierrez's *sufficiency* challenge.
**Maj. Op. at 13.** But the appellate division did hold that
the depraved indifference conviction was not against the
weight of the evidence, <u>see</u> <u>People v. Gutierrez</u>, 790
N.Y.S.2d 493, 494 (2d Dep't 2005), which is a more exacting
standard of review, <u>see</u> <u>Parker</u>, 666 F.3d at 833; <u>People v.</u>

2

Bleakley, 69 N.Y.2d 490, 495 (1987). "Therefore, to the extent the Appellate Division decided that [the] conviction was not against the weight of the evidence, it necessarily decided that there was sufficient evidence to support the verdict." Parker, 666 F.3d at 833. It should follow that the appellate division found that the conviction was not against the weight of the evidence. But that conclusion arguably depends on the state of the law concerning depraved indifference murder, and exactly how the appellate division undertakes weight-of-the-evidence review.[1]

A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engaged in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). Given the record here--witness recollections

---

[1] There is some authority in New York for the proposition that weight-of-the-evidence review is measured against only the jury charge given without defendant's objection. See People v. Danielson, 832 N.Y.S.2d 546, 550 (1st Dep't 2007). However, in Parker, a panel found that this type of review was sufficient to require deference to the appellate division's conclusion as if it had reviewed the jury's verdict for sufficiency of the evidence. See Parker, 666 F.3d at 833. Gutierrez has also taken the position that New York law requires Payne be applied to the appellate division's weight-of-the-evidence review.

3

that were inconsistent and blurred by time and intoxication, and no direct testimony at all about either stabbing (even from the surviving victim)--a considerable range of inference was available to the jury.  One such available inference would be depraved indifference murder--unless New York law (then prevailing, or properly made retroactive) is that a one-on-one, face-to-face fatal assault is intentional, categorically.

In the middle of a brawl outside of Rick's, Gutierrez produced his knife and threatened a group of men.  In his written confession, Gutierrez described how he "accidentally stabbed someone" who ran onto his knife (assumably Narcisso Villaplana).  From this evidence, a jury could conclude that Gutierrez was wielding his knife with a random menace that demonstrated deliberate indifference to human life.

After stabbing Narcisso, Gutierrez and three others pursued or dragged John Villaplana away from the fracas toward a driveway down the road.  There is a gap in the evidence until Randall Villaplana's testimony that he drove up to John, who had already been mortally wounded, but was still on his feet, staggering.  The medical examiner testified that John could have remained conscious for

4

several minutes after the stabbing, and ran or moved around during that time period.  No one saw Gutierrez stab John.

John suffered a single stab wound to his chest, with two wound tracks.  The medical examiner testified at trial that the two wound tracks were consistent either with the knife being partially withdrawn and reinserted *or* with "the victim moving back, and then the victim for some reason going forward again"; he could not opine which was more likely.  So the proper inference to be drawn on our review is that John was the one that moved during the stabbing, or that both John and Gutierrez were changing positions during the stabbing.  Hearing this evidence, a jury could doubt that John's stabbing was intentional, and believe instead that it occurred during a struggle.

In sum, how, where, and why Gutierrez stabbed John remains open to different, reasonable interpretations. Depending on the (unsettled) state of New York law, one interpretation could have been that Gutierrez was acting with deliberate indifference to human life throughout the brawl at Rick's and the subsequent stabbing of John.

**B**

The panel opinion recounts in detail a view as to how New York's depraved indifference law had changed as of the decision in People v. Payne, 3 N.Y.3d 266 (2004). But it relies on that decision's dicta, not on its facts or holding (or those of People v. Hafeez, 100 N.Y.2d 253 (2003) and People v. Gonzalez, 1 N.Y.3d 464 (2004)). No prolonged discourse is needed, however, because the New York Court of Appeals best knows what it said, did, and held.

The three depraved indifference cases decided before Gutierrez's conviction became final (Hafeez, Gonzalez, and Payne) do not compel the conclusion that a one-on-one stabbing or shooting is reliably intentional. True, they involved one-on-one killings; at the same time, however, those killings were unquestionably intentional. In Hafeez, the defendant had plotted the victim's murder and laid in wait for him, before leaping out, throwing him against a wall, and stabbing him once in the chest. 100 N.Y.2d at 257. "[T]here exist[ed] no valid line of reasoning that could support a jury's conclusion that [the] defendant possessed the mental culpability required for depraved indifference murder," which was at the time recklessness.

6

<u>Id.</u> at 259.  In <u>Gonzalez</u>, the defendant had walked into a barbershop and shot the victim in the chest and head, and after the victim fell to the ground the defendant shot him eight more times in the back and head.  1 N.Y.3d at 465-66.  In <u>Payne</u>, the defendant marched over to his neighbor's house, with whom he was angry, carrying a 12-gauge shotgun, and shot him just below the chest.  3 N.Y.3d at 269.  He admitted to shooting his neighbor at trial, but argued that he acted in self-defense.  <u>Id.</u>  After rejecting the justification defense, the jury had no choice but to conclude that the killing was intentional.  Each of those opinions also preserved <u>People v. Sanchez</u>, 98 N.Y.2d 373 (2002), and did not overrule it.  <u>See</u> <u>Payne</u>, 3 N.Y.3d at 272; <u>Gonzalez</u>, 1 N.Y.3d at 469; <u>Hafeez</u>, 100 N.Y.2d at 258-59.

Taken together, <u>Hafeez</u>, <u>Gonzalez</u>, and <u>Payne</u> establish that an intentional murder could not have been done recklessly, the standard articulated in <u>People v. Register</u>, 60 N.Y.2d 270 (1983), and <u>Sanchez</u>.  And they reflect the New York Court of Appeals' willingness to identify certain factual scenarios that would support a jury's finding of reckless conduct.  However, none of the three cases gave the

7

Court of Appeals an occasion to consider facts like those now before us. Here, although the fatal stabbing was one-on-one and face-to-face, there is sufficient evidence for a jury to find that the defendant did *not* act with an intent to kill, and that his conduct put others at risk.

Two of our recent cases involving defendants whose convictions became final after Payne upheld depraved indifference convictions in circumstances similar to those of Gutierrez's crime. In Garbutt v. Conway, 668 F.3d 79 (2d Cir. 2012), the defendant had set out to confront his ex-girlfriend. Id. at 80. After intercepting her and her daughter at a bus stop, he stabbed his ex-girlfriend in the arm and chest, and cut the daughter's jacket. Id. Although the defendant had procedurally defaulted and the panel was concerned with whether failure to consider the unreserved claim would result in a fundamental miscarriage of justice, the panel nonetheless concluded that a rational jury "could have found Garbutt guilty of recklessness manifesting depraved indifference to human life." Id. at 82. It considered that the jury could have "inferred from the fact that Garbutt ran away before verifying that [the victim] had died that he had not intended to kill her." Id.

8

Parker v. Ercole, 666 F.3d 830 (2d Cir. 2012), employs a similar analysis. The defendant and his friend Sanchez, after a night of drinking, had stolen the car of the victim (Johnson). Id. at 832. Like this case, what happened next was never entirely clear:

> When Johnson and his friend confronted them, a fight broke out and Johnson punched Sanchez in the face, knocking him to the ground. At this point, a witness heard Parker announce "I got something for that nigga" and then heard a "pop" as a single rifle shot was fired from inside the front hallway of a residence across the street from where Johnson was pacing back and forth amidst several other people. Johnson, who was struck by the bullet, ran away and collapsed between a car and a snowbank. His body was not found for several hours and none of Johnson's friends believed he had been killed in the interim. However, Parker was heard bragging in the meantime that he had shot Johnson. Parker testified on his own behalf and maintained that he was not the shooter.

Id. The panel in Parker concluded that "there was sufficient evidence for a rational trier of fact to find that Parker acted recklessly and with depraved indifference when he shot Johnson, and not with the intent to kill." Id. at 835.

Depending on the state of New York law, a jury weighing the facts set forth in Part A of this opinion, might reasonably conclude that Gutierrez did not act intentionally. Gutierrez, who had been drinking, wielded

9

his knife during a brawl outside a bar, during which he unintentionally stabbed Narcisso. He then dragged John away from Rick's, or chased him down the road, where he stabbed John, perhaps during a struggle. When Randall arrived on the scene, he found two men standing next to John "waiting to see how John was gonna react." The jury could find that Gutierrez's conduct was inconsistent with an intent to kill. Gutierrez left the scene while John was still standing, when an intentional killer might have finished him off. Gutierrez did not know whether John was living or dead when Gutierrez was later questioned by the police. When asked why he stabbed John, Gutierrez told a detective that he "didn't know why" he stabbed him. After the stabbing, Gutierrez bragged to a van full of strangers that he was "happy that he had used his knife." The jury was free to conclude from this evidence that Gutierrez's conduct was not intentional, but was reckless and took place in circumstances evidencing a depraved indifference to human life--unless New York law precluded such a finding. That is why this certification is important.

10

## C

With regard to the question of retroactive application, I would take at face value the court's decision in People v. Jean-Baptiste, 11 N.Y.3d 539 (2008): New York's evolving standard for depraved indifference murder only "appl[ies] to cases brought on direct appeal in which the defendant *has adequately challenged the sufficiency of the proof* as to his depraved indifference murder conviction."  Id. at 542 (emphasis added).  I think that New York's procedural default rule is thus built into the rule of retroactivity, so that Payne, People v. Suarez, 6 N.Y.3d 202, 211 (2005), and People v. Feingold, 7 N.Y. 3d 288 (2006), are not retroactively applicable to cases on direct appeal unless the defendant had objected on the grounds of insufficiency.

There is good reason for such a rule in these depraved indifference murder cases: when a conviction is inadequately supported by the evidence, the appellate divisions of New York's supreme courts possess the authority to reduce it to a lesser included charge that finds adequate support. See N.Y. Crim. Proc. Law § 470.15(2)(a); People v. Jean-Baptiste, 844 N.Y.S.2d at 72, 73 (2d Dep't 2007).  If Gutierrez was not in fact guilty of depraved indifference

11

murder--and the error had been brought to the attention of that court--the appellate division could have properly reduced his conviction to the lesser included charge of second degree manslaughter.

The rationale advanced by the New York Court of Appeals for the change completed by Feingold is consistent with a rule limiting retroactive application to cases in which a proper objection was made at trial. In Policano v. Herbert, 7 N.Y.3d 588 (2006), the New York Court of Appeals recounted three considerations to be weighed when deciding whether to apply a new principle retroactively: "the purpose to be served by the new standard; the extent of the reliance by law enforcement authorities on the old standard; and the effect on the administration of justice of a retroactive application of the new standard." Id. at 603.

The "purpose to be served by the new standard" is the most important consideration. In the present context, that purpose "is to dispel the confusion between intentional and depraved indifference murder" and to "make *future* homicide prosecutions more sustainable, increasing the likelihood that defendants who are proven beyond a reasonable doubt to have committed intentional murder will be properly held to

12

account for that crime." Id. at 603-04 (internal quotation marks omitted, emphasis added). Retroactive application to a defendant who did not make a proper insufficiency challenge runs counter to that objective. Applying the principles of Hafeez, Gonzalez, and Payne to Gutierrez's trial, which took place in 2001, would do less than nothing to make "future homicide prosecutions more sustainable." Such application would severely undermine prosecutors' reliance on the standard (established in Register), which had been consistently applied for 20 years. Id. at 604 ("For two decades prosecutors relied on Register's objectively determined degree-of-risk formulation when making their charging decisions.")

Retroactive application here would also frustrate the efficient "administration of justice," by opening an avenue for habeas relief when the defendant failed to raise an objection in courts that could have obviated the problem. Moreover, as the New York Court of Appeals has drily observed, "[d]efendants who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attractive candidates for collateral relief after their convictions have become final." Suarez, 6 N.Y.3d at 217-18.

But, all this said, we cannot be certain that the Court of Appeals sees its law that way.  Hence, my concurrence in this certification.

* * *

The panel poses two important questions to the New York Court of Appeals.  I suggest that those questions be supplemented as follows:

1.  For the circumstances of a crime to evince depraved indifference--as of September 12, 2005, when the defendant's conviction became final--must the threat and danger to others inhere in the very gesture that inserts the knife or fires the gun point-blank, or is it enough that defendant endangered a group with his weapon, but then singled out for attack, at random, one victim from the threatened group of persons?

2.  Does the evolving standard of depraved indifference law, as it existed on the day defendant's conviction became final, apply retroactively to a defendant who did not preserve an objection to the sufficiency of his depraved indifference murder conviction; or, consistent with People v. Jean-Baptiste, 11 N.Y.3d, 539 (2008), is the retroactive application limited to "cases brought

14

on direct appeal in which the defendant has adequately challenged the sufficiency of the proof as to his depraved indifference murder conviction," id. at 542.

15